GEORGE E. TUCKER, APPELLANT, v. JAMES BLAUDIN
AND OTHERS, RESPONDENTS.

*General guaranty of a bond and mortgage—when a person signing it with the
mortgagor, without consideration, is liable to a purchaser of the bond and mortgage.*

In 1874 J. B. Pickit, who was desirous of selling a bond and mortgage executed to
him in 1873 by one James Blaudin and others, and had applied to one Strickland,
to purchase them, obtained from the defendant Abbott his signature to the
following guaranty written upon the bond:

"For value received we hereby guaranty the payment of the within bond,
according to the conditions thereof.

"WATERTOWN, *May* 12, 1874.                    "J. B. PICKIT.
                                               "E. W. ABBOTT."

Strickland having decided not to purchase the bond and mortgage, Pickit, in
July, 1875, applied to the plaintiff to purchase them, proposing to guaranty the
bond himself and to have it guaranteed by a responsible person; and thereafter,
and on July 16, 1875, Pickit, by a written sealed assignment, transferred the
said bond and mortgage to the plaintiff, who purchased them at a discount of
ten per cent.

Upon the trial of this action, brought to foreclose the bond and mortgage, evidence
was given showing that no consideration was received by Abbott for executing
the guaranty, and at the time he did so his object was to enable Pickit to sell the
mortgage to Strickland.

*Held,* that as Abbott had, with Pickit, signed this guaranty, which was general in
its terms and did not purport to be a contract with any person named, and had
put it in Pickit's hands to be used in negotiations with Strickland, he was
liable upon it to the plaintiff.

That the rule that a purchaser of a chose in action must abide by the case of the
person from whom he buys, was not applicable to this case, as it was not a
guaranty to Picket, and he never had, and never could have had, a right of
action against Abbott on it.

That the fact that the date of the guaranty was a year previous to the purchase
did not put the purchaser on inquiry or suggest any suspicion, nor did the fact
that he took from Pickit another guaranty, contained in the assignment, show that
he did not rely on the former guaranty, although Pickit's guaranty in the
assignment was under seal and, therefore, better than the other

*It seems,* that parol evidence to show that the guaranty was to Strickland only,
was not admissible, as it changed the effect of the written paper and made it a
special and limited guaranty instead of a general and unlimited guaranty.

APPEAL from a judgment, entered upon the trial of this action at
the St. Lawrence Circuit and Special Term by the court without
a jury.

*Potter & Abbott,* for the appellant.

*V. P. Abbott,* for the respondents.

LEARNED, P. J. :

James Blaudin and others, in 1873, executed a bond and mortgage to Justus B. Pickit. In 1874, Pickit, being the owner of the bond and mortgage, and desirous of selling the same, and having applied to one Strickland to purchase, obtained from defendant Abbott his signature to the following guaranty written upon the bond :

" For value received we hereby guaranty the payment of the within bond according to the conditions thereof.

" WATERTOWN, *May* 12, 1874. " J. B. PICKIT.

" E. W. ABBOTT."

There was at the time no consideration to Abbott for this guaranty. The object was to enable Pickit to sell the bond and mortgage to one Strickland. Pickit was not negotiating then with plaintiff. Abbott thinks that Strickland was the man with whom they were negotiating. The papers were to be left with this man, and, if he decided not to purchase, he was to return them. Strickland did not purchase. About July, 1875, Pickit applied to the plaintiff to purchase the bond and mortgage, and Pickit proposed to guaranty the bond himself and to have it guaranteed by a responsible person. Whereupon the plaintiff purchased the bond and mortgage, and Pickit made a written assignment, indorsed to him, July 16, 1875, which contains a guaranty. The bond, at this time, had upon it the guaranty aforesaid of Pickit and Abbott. This is an action to foreclose the bond and mortgage, and the only question on this appeal is whether Abbott is liable on his guaranty. The court below held that he was not. The bond was for the payment of $7,679.70, and interest from November 1, 1873. Interest only to be paid for two years, then the principal in ten equal annual payments. The action was commenced August 16, 1886. Abbott sets up the six year statute of limitation. The plaintiff, in purchasing the bond and mortgage, was allowed a discount of ten per cent. It is claimed that the liability of Pickit and of Abbott is limited to the amount paid and interest. The learned justice

held that Pickit, on the guaranty under seal, was liable, but only to the amount received by him ; that neither Pickit nor Abbott was liable, on the guaranty indorsed upon the bond for the sum of money which became due according to the terms of the bond, on or prior to November 1, 1879, more than six years before the commencement of the action. That Abbott was not liable at all on the guaranty. The plaintiff appeals. The only question argued is that ·of the liability of Abbott on his guaranty.

The bond and mortgage were assigned and delivered to plaintiff. According to his testimony, there was to be the guaranty of another person. Such guaranty was on the bond at the time of delivery and ·assignment. There is no reason to think that Pickit did not intend to deliver also the guaranty, and to transfer it, so far as he could do so. The letters of Pickit to plaintiff, show that he first offered to. give ·a responsible guarantor, and afterwards named Abbott as the man who would guaranty the bond. Under these facts it is evident that Pickit intended to transfer the guaranty, and that plaintiff relied thereon. It is the rule that the transfer of the principal debt ·carries with it all securities.

The defendant Abbott urges the rule that the purchaser of a chose must abide by the case of the person from whom he buys. That rule would apply, if the guaranty signed by Abbott had been a guaranty to Pickit. In that case Pickit would have transferred only such right of action as he himself had thereon against Abbott.

But that is not this case. This guaranty is signed by Pickit and Abbott. It is not a guaranty to Pickit. On its face it is a guaranty by Pickit and Abbott to some third person not named. Not only is this apparent on the face of the guaranty, but it is proved by Abbott's testimony. Pickit, then, never had, and never could have had, a right of action against Abbott on the guaranty. And in transferring the guaranty to plaintiff, Pickit did not transfer any right of action possessed by him against Abbott.

The question here involved is different. It is whether Abbott, having signed this guaranty with Pickit, not on its face directed to any person, and having put this in Pickit's hands for the purpose of negotiation with Strickland, can evade liability when, for value, Pickit transfers the guaranty to plaintiff.

This guaranty is general in its terms; that is, it does not purport to be a contract with any person named. It is an open invitation to any one to whom it is transferred to take the bond and mortgage, relying on this guaranty. If Abbott can evade his liability, then he perpetrates a fraud on the plaintiff. He puts a paper into Pickit's hands, on which the plaintiff may reasonably rely; and thus the plaintiff is induced to part with his money.

The cases cited by defendant, such as *Trustees of Union College* v. *Wheeler* (61 N. Y., 105), do not apply. Those are cases where it was held that a party to a contract (excepting promissory notes, etc.) can transfer to a third person only such right of action as he himself has. But in this case the plaintiff does not claim as the assignee of any right of action which Pickit had against Abbott. For the guaranty gave no right of action to Pickit. Pickit was joint guarantor, not guarantee. Plaintiff claims as the original party, to whom, in good faith on his part, this open guaranty was transferred by the person intrusted with it. He claims as one to whom this guaranty was promised as an inducement to purchase, and who, thereupon, purchased and paid for the bond and mortgage.

Had the defendant Abbott made a special guaranty, limited to Strickland, the case would have been different. But this guaranty is general. Any one who, on the strength of it, purchased the bond and mortgage, might justly consider the guaranty as addressed to him. And the money, with which he parted, formed the consideration for the guaranty. The guaranty went into effect when he, in good faith, purchased the bond and mortgage thus guaranteed. Nor was the fact that the date of the guaranty was a year previous anything to suggest suspicion or to put the purchaser on inquiry.

Nor did the fact that he took from Pickit another guaranty, contained in the assignment, show that he did not rely on the former. Pickit's guaranty in the assignment was under seal, and, therefore, was better than the other as to him.

The parol evidence changed the effect of the written paper. It made it a special, limited guaranty, instead of one general and unlimited. In *Juilliard* v. *Chaffee* (92 N. Y., 530), in which parol evidence had been properly admitted, the remark is made: "If a creditor was here who, on the faith of the security apparently afforded by the instrument signed by the defendant, had either sold goods or

given credit   *   *   *   a different question would arise." That case
is here.    The plaintiff, on the faith of the security apparently offered
by the guaranty, has parted with his money.    No parol evidence
should be permitted to change the written instrument on which he
trusted.    (*Eighmie* v. *Taylor*, 98 N. Y., 288.)    The parol evidence
did change the effect of the written guaranty.    The writing was a
promise unqualified to guaranty the bond and mortgage, open to the
acceptance of any one.    The parol evidence changed it to a guaranty
to Strickland only, as if it were written:   " We hereby guaranty to
Moses Strickland."

If Pickit broke faith with Abbott in transferring the bond, with
the guaranty thereon, to plaintiff, then we must apply the rule that
when one of two innocent parties must suffer through the wrongful
act of a third, the loss shall fall on him who, by his act, has enabled
the guilty person to do wrong.    Abbott, by permitting Pickit to
take and keep the guaranty, enabled him to induce plaintiff to pur-
chase the bond and mortgage.    Abbott, then, and not the plaintiff,
should bear the loss.

Judgment reversed as to Abbott, new trial granted, costs to
abide event.

LANDON and INGALLS, JJ., concurred.

Judgment reversed and new trial granted as to Abbott, costs to
abide event.